IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RED LION RENEWABLES, LLC, § § Plaintiff, § § v. § § CHRISTOPHER S. HAFF; DRAGON § CAPITAL, LLC; LING JUNCTION, § LLC; BOE COMPANIES I through X; § and DOES I through X, § § Defendants. § | | CIVIL ACTION NO. 5:19-cv-1113 (JURY TRIAL REQUESTED) |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT
AND REQUEST FOR PREJUDGMENT ATTACHMENT
AND INJUNCTIVE RELIEF**

COMES NOW Red Lion Renewables, LLC, Plaintiff ("Red Lion"), by and through its attorneys, and files this *Original Verified Complaint and Request for Prejudgment Attachment and Injunctive Relief* against Defendants Christopher S. Haff, individually, Dragon Capital, LLC, Ling Junction, LLC, Boe Corporations I through X, and Does I through X, and in support thereof respectfully alleges and shows the Court as follows:

**I.     THE PARTIES**

1.     Red Lion is an Iowa-based Limited Liability Company with a principal place of business at 2719 Georgetown Avenue, Norwalk, IA 50211.

2.     Defendant Christopher S. Haff is a natural person who, upon information and belief, resides at, and may be served at, 255 Stoney Ridge Road, Bulverde, TX 78232.

3.     Defendant Dragon Capital, LLC is a purported Texas-based Limited Liability Company with an alleged principal place of business at 111 Lariat Drive, San Antonio, Texas 78232. It may be served with process through Christopher S. Haff at 255 Stoney Ridge Road,

Bulverde, TX 78232 or by long-arm statute through the Texas Secretary of State.

4. Defendant Ling Junction, LLC is a purported Texas-based Limited Liability Company with an alleged principal place of business at 15135 Delachaise Street, San Antonio, Texas 78323. It may be served with process through Christopher S. HAff at 255 Stoney Ridge Road, Bulverde, TX 78232 or by long-arm statute through the Texas Secretary of State.

5. Plaintiff does not know the true names of the individuals, corporations, partnerships, and entities sued and identified in fictitious names as Boe Companies I through X and Does I through X (collectively, "Doe Defendants"). Plaintiff alleges that such Doe Defendants are responsible for damages suffered by Plaintiff as more fully discussed under the claims for relief set forth below. Plaintiff will request leave of this Honorable Court to amend this Complaint to show the true names and capacities of each such fictitious Doe Defendant when Plaintiff discovers such information.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, because the Verified Complaint alleges claims arising under the laws of the United States; seeks damages exceeding the sum of $75,000 and is between citizens of different states; and because all other claims alleged herein are part of the same case or controversy under Article III of the United States Constitution.

7. The United States District Court for the Western District of Texas, San Antonio Division, is the proper venue for this lawsuit pursuant to 28 U.S.C. § 1391(a) and (b) because a majority of the Defendants purportedly reside within this judicial district, and because all or a substantial part of the events or omissions giving rise to the claims alleged in this Verified Complaint occurred within San Antonio, Bexar County, Texas.

## III.     FACTUAL BACKGROUND

### A. Red Lion's Business Operations

8. Red Lion is an Iowa-based Limited Liability Company that provides development and financing services for schools, churches, and towns seeking to integrate solar energy facilities into their respective institutions. Part of Red Lion's business includes contracting with individual investors, entities, and various financial institutions to secure funding vehicles for the construction of solar energy facilities and other renewable energy products.

### B. Red Lion and Defendants Haff and Dragon Capital Execute a Funding Deal.

9. Red Lion was first introduced to Defendant Haff through a mutual acquaintance in Iowa in or around March 2019. Defendant Haff held himself out to be a principal of Dragon Capital, LLC, a purported Texas-based Limited Liability Company with a primary focus on facilitating financing and lending transactions. In a series of communications transmitted by phone and email, Defendant Haff represented to Red Lion that he and/or Dragon Capital, LLC had significant connections in the banking and construction financing markets. Through these alleged connections, Defendant Haff presented a financing endeavor to Red Lion, offering Red Lion participation in a deal that would provide Red Lion with significant funding for use in Red Lion's solar energy facility development. Defendant Haff's significant funding purportedly stemmed from a line of credit available to Defendant Haff and/or Dragon Capital, LLC.

10. To access the alleged line of credit, Defendant Haff through Dragon Capital, LLC required that Red Lion deposit a sum certain into escrow in addition to other terms and conditions. On April 4, 2019, the terms of the transaction were reduced to writing via a Letter of Intent (executed by Defendant Haff on behalf of Dragon Capital, LLC, and Terry Dvorak, principal of Red Lion). A true and correct copy of the Letter of Intent is attached hereto as **Exhibit 1**. Per the

terms of the Letter of Intent, Dragon Capital, LLC promised to procure a line of credit in the amount of $50,000,000 to be made available to Red Lion. **Ex. 1** at 1. In exchange, the Letter of Intent obligated Red Lion to perform "due diligence" by, *inter alia*, depositing monies into an escrow account to "facilitate the processing and closing of the credit facility." *Id.* Subsequent communications by Defendant Haff clarified that this "due diligence" was required as a form of collateral for Dragon Capital, LLC and its apparent affiliate Ling Junction, LLC, to secure a $200 million line of credit, $50 million of which would be made available to Red Lion. To mitigate Red Lion's risk of putting up funds in exchange for a promise to provide a line of credit, the Letter of Intent obligated Dragon Capital, LLC and/or Ling Junction, LLC to return Red Lion's deposit "at the time the line of credit [was] established." *Id.* at 3. Further, the Letter of Intent obligated Dragon Capital, LLC and/or Ling Junction, LLC to return the deposit "from the escrow attorney if the project [did not] fund immediately." *Id.* Red Lion and Dragon Capital, LLC ultimately agreed that Red Lion would deposit an amount of $400,000 though the Letter of Intent initially contemplated a $650,000 deposit value. No updated letter of intent was executed.

11. In subsequent communications with Defendant Haff, Red Lion was instructed to wire its $400,000 to Leonard Medley of Medley & Associates (the "Escrow Agent")—an attorney in Atlanta, Georgia—who would act as the escrow agent for the transaction. Defendant Haff informed Red Lion that its $400,000 deposit would be held by the Escrow Agent on behalf of Ling Junction, LLC, as part of a larger transaction. Per the terms of the Letter of Intent, Ling Junction, LLC took "financial responsibility for any deposits made by Red Lion or its investors," acting essentially as a purported intermediary between Red Lion and the alleged entity that was to provide the $50 million letter of credit. **Ex. 1** at 6.

12. Upon receipt of Red Lion's deposit by the Escrow Agent (as well as other

purported deposits by unnamed individuals/entities), Ling Junction, LLC, was obligated to deliver all deposited funds to an entity named Newport Global Trading, Ltd, the entity that Defendant Haff represented would be issuing the line of credit for Red Lion's use.

### C. Red Lion is Induced by Defendants into Wiring Funds.

13.     On April 10, 2019, in reliance upon Defendant Haff and Dragon Capital, LLC's material representations, Red Lion wired $400,000 to the Escrow Agent (the "Deposit"). In reliance upon further representations by Defendant Haff that the above-described financial transaction was moving along as planned—specifically, an email from Defendant Haff on April 18, 2019, stating that the line of credit had been established—Red Lion authorized the Escrow Agent to release the Deposit for Ling Junction, LLC's benefit. As Red Lion learned only recently, following its release of funds, the Escrow Agent purportedly wired a substantial portion of the Deposit to a series of accounts outside the United States, none of which included Newport Global Trading, Ltd. The Escrow Agent further issued a check to an unidentified local Georgia individual, and retained a fee for the Escrow Agent's own services. None of these transactions was specifically authorized by Red Lion, nor had Red Lion ever been informed that its Deposit would be used in this manner.

14.     By May 10, 2019, nearly a month later, Red Lion still had not received the promised funding. Red Lion raised numerous concerns to Defendant Haff via text and email communications about the lack of line of credit funds and the impact to Red Lion's business. Red Lion was already losing customers because Dragon Capital, LLC had failed to deliver the promised funds. In fact, Defendants' failure forced Red Lion to delay certain construction projects or cancel other projects altogether, thereby forcing Red Lion's clients, and Red Lion itself, to lose valuable state and federal tax credits for solar facility installations, as well as grant opportunities and other

revenues from such installations. During this period, Defendant Haff made numerous, unsupported excuses for the delay, including blaming other individuals and financial institutions that were allegedly parties to the transaction, claiming federal government authorization was running slower than expected, and asserting that "tax equity" oversight of the transaction was pending. All of these excuses were communicated by text message or phone from Defendant Haff and, in retrospect, none had any documentary or evidentiary support.

15.     Through June 2019, Red Lion continued to press Defendant Haff on the status of the letter of credit, the line of credit, and the return of Red Lion's Deposit. In a series of text exchanges and emails, Defendant Haff continued to represent that another party to the transaction had allegedly caused the delay, the issuance of the letter of credit was imminent, and that Red Lion would receive the funds and refund of its Deposit promptly. Defendant Haff and Dragon Capital, LLC failed to deliver on such promises.

**D. Red Lion Suspects, Investigates, and Uncovers Defendants' Intentional Fraud.**

16.     By July 2019, Dragon Capital, LLC still had not delivered any funding nor returned Red Lion's deposit. Suspecting possible fraud, Red Lion began investigating the propriety of Defendant Haff, Dragon Capital, LLC, and the deal itself. Red Lion's investigation into Defendant Haff uncovered considerable wrongdoing, including a history of felonious criminal allegations. After searching public records in Defendant Haff's and the LLCs' counties of residence and purported incorporation, Red Lion discovered that Defendant Haff faces a current embezzlement charge—specifically theft of funds between $2,500 to $30,000—on which Defendant Haff is currently awaiting trial for a criminal matter (Cause 2018-CR-13069) in Bexar County, Texas. Basic internet and public court record searches also revealed that Defendant Haff had a history of prior criminal activity involving other theft, embezzlement, and check fraud

convictions.

17. With respect to this financing deal itself, Red Lion contacted an attorney in Texas purportedly working on specific loan agreements—as relayed by Defendant Haff in early communications with Red Lion—only to learn that that attorney had never represented Defendant Haff or Dragon Capital, LLC and was not involved in the transaction in any manner.

18. In August 2019, having received nothing but additional broken promises and excuses from Defendant Haff, Red Lion was forced to retain undersigned counsel to investigate the deal and pursue litigation if necessary. Red Lion, through counsel, uncovered the following:

- Neither Dragon Capital nor Ling Junction appear to be registered Texas LLCs. There is no proof that either company is a registered entity in *any* state in the United States.

- The business address of Dragon Capital, LLC on the face of the Letter of Intent is actually the address of a residential property owned by Defendant Haff's brother. Defendant Haff's brother was wholly unaware that Defendant Haff was using that address as the purported business address for Dragon Capital, LLC, until receiving a demand letter from undersigned counsel. Needless to say, Defendant Haff's brother did not authorize Defendant Haff to use that address.

- The Escrow Agent wired $391,000 of Red Lion's $400,000 Deposit to the following non-US entities and individual:
    - $175,000 to ZVM Funding CV in the Netherlands
    - $131,000 to Aurelius Consultancy, Ltd., in Dubai, UAE
    - $78,000 to JM Cane Accountants in the United Kingdom
    - $7,000 to Martien Eerhart in the Netherlands

19.     After Red Lion confronted the Escrow Agent with Defendants' wrongdoing, the Escrow Agent provided Red Lion with an escrow agreement between Ling Junction, LLC and Newport Global Trading, Ltd. (the "Escrow Agreement"). A true and correct copy of the Escrow Agreement is attached hereto as **Exhibit 2**.

20.     The address of Ling Junction, LLC on the Escrow Agreement is not a valid Texas address, but other documents uncovered in Red Lion's investigation provided a valid Texas address nearly identical to the address listed on the Escrow Agreement. Ling Junction, LLC's address is a rental property formally leased and occupied by Defendant Haff's father, Roderick Haff, but Roderick Haff had not lived at that address for over three years. Moreover, Defendant Haff had never resided there.

21.     Not only is Ling Junction, LLC's business address the former residence of Defendant Haff's father, the Escrow Agreement itself named Roderick Haff as the CEO of Ling Junction, LLC. An investigation into the whereabouts of Roderick Haff revealed that he currently resides in a senior living facility in or near San Antonio, Texas. Further, Defendant Haff admitted that Roderick Haff was a retired member of Ling Junction, LLC and that Defendant Haff himself was the "only active member." Roderick Haff's ability, let alone authority, to execute the Escrow Agreement on behalf of Ling Junction, LLC became questionable at best.

22.     After uncovering the above-described information regarding Defendants Haff, Dragon Capital, LLC, and Ling Junction, LLC, Red Lion, through counsel, issued a demand letter to Defendants on August 27, 2019, in an attempt to resolve this matter short of litigation. A true and correct copy of Red Lion's demand letter is attached hereto as **Exhibit 3**.[1] In response to Red Lion's demand, Defendant Haff sent undersigned counsel a series of emails in which he claimed

---

[1] The demand letter sent to Defendants included as an attachment the Letter of Intent attached here as Exhibit 1. For judicial efficiency, that same Letter of Intent is omitted from Exhibit 3 here.

he was not at fault for Red Lion's damages, asserted that he had allegedly filed his own lawsuit seeking to recover Red Lion's Deposit and other funds, and threatened that he would countersue Red Lion for unknown causes of action were Red Lion to pursue litigation against him. Further investigation revealed that no such lawsuits appear to have been filed by Defendant Haff, Dragon Capital, LLC or Ling Junction, LLC. Direct requests of Defendant Haff for contact information for his purported civil attorney were unsuccessful. No further response to Red Lion's demand has been forthcoming and Red Lion was forced to initiate this lawsuit.

## IV.   CAUSES OF ACTION
### Count I – Breach of Contract
### (All Defendants)

23. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

24. The Letter of Intent between Defendant Dragon Capital, LLC and Red Lion is a valid and enforceable contract, under which Red Lion performed all of its obligations to Defendant Dragon Capital, LLC.

25. As set forth above, Defendant Dragon Capital, LLC breached its obligations owed to Red Lion under the Letter of Intent by failing to return the $400,000 deposit when it became obvious that the $50 million line of credit was not funding.

26. Likewise, the Letter of Intent obligates Ling Junction, LLC as another entity financially responsible for Red Lion's Deposit. Despite repeated requests, Ling Junction, LLC has failed to return Red Lion' $400,000.

27. As a result of Defendant Dragon Capital, LLC and Ling Junction, LLC's breaches of its obligations to Red Lion, Red Lion has suffered damages well in excess of $1,300,000.

28. As a result of Defendants' breaches, Red Lion suffered injury in the amount of at

least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count II – Fraud
### (All Defendants)

29. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

30. Defendants made material representations to Red Lion regarding the ability to obtain funding under a letter of credit, the use of Red Lion's Deposit as described above, and assurances that Defendants would return Red Lion's Deposit should the letter of credit not be obtained or upon demand by Red Lion.

31. Defendants' representations were false.

32. When defendants made the above-described representations, each defendant knew their respective representations were false or made the representations recklessly, as positive assertions, and without knowledge of their truth.

33. Defendants made the above-described representations with the intent that Red Lion act on them.

34. Red Lion relied on Defendants' representations.

35. Defendants' representations cause Red Lion injury.

36. As a result of Defendants' fraud, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count III – Violations of Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*
### (All Defendants)

37. Red Lion hereby alleges and incorporates by reference each and every one of the

preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

38. Dragon Capital, LLC and Ling Junction, LLC are purported enterprises doing business in the United States and affecting interstate commerce. Defendant Haff is a member of or otherwise associated with Dragon Capital, LLC, and Ling Junction, LLC.

39. Defendants agreed to and did conduct and participate in the conduct of Defendant Haff, Dragon Capital, LLC, and Ling Junction, LLC's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Red Lion. Specifically, as outlined above, each individual Defendant intentionally, maliciously, and with utter disregard for his or its legal and ethical obligations to Red Lion induced Red Lion into wiring $400,000 to the Escrow Agent with the intent to unlawfully distribute Red Lion's Deposit to unidentified sources, in violation of the promises made in the Letter of Intent, and with the intent to defraud Red Lion.

40. Moreover, Defendant Haff individually engaged in a pattern of racketeering activity by regularly encouraging, soliciting, and even urging Red Lion to deposit the $400,000 that would guarantee an imminent release of purported project funding for Red Lion's use in its business endeavors.

41. Defendants used, invested, and/or benefited from monies received from Red Lion, funds that were derived from Defendants' racketeering activity by improperly inducing Red Lion into believing that Defendants had obtained a valid letter of credit or other financial funding vehicle.

42. Defendants' various acts as described above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5). Defendants directly and indirectly conducted and participated in the conduct of Dragon Capital, LLC and Ling Junction, LLC's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

43. Defendants intentionally conspired and agreed to directly and indirectly use or invest Red Lion's deposit that they obtained from their scheme of fraudulent activity. Defendants knew that Red Lion's $400,000 Deposit had obvious economic value to Red Lion and that using the Deposit for their own purposes would injure Red Lion.

44. As a direct and proximate result of Defendants' racketeering activities and RICO Act violations, Red Lion's business has been injured in that it has lost goodwill, client business, and significant financial investment well in excess of the $400,000 Deposit. Red Lion has suffered and will continue to suffer immediate and irreparable injury so long as Defendants remain in possession of and continue to control Red Lion's $400,000 Deposit in this unlawful manner.

45. As a result of Defendants' actions, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

## Count IV – Fraudulent Inducement
### (All Defendants)

46. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

47. Before Red Lion executed the Letter of Intent and wired the $400,000 Deposit, Defendants Haff and/or Dragon Capital, LLC made material representations to Red Lion regarding the use and guaranteed return of the $400,000 Deposit, the likelihood of obtaining a valid letter of credit for Red Lion to use in obtaining project funding, and other material representations regarding the financial promise Defendants' services guaranteed.

48. Defendants' representations were false and made with the intent that Red Lion execute the Letter of Intent and wire the $400,000 Deposit to the Escrow Agent for the benefit of Defendant Haff, Dragon Capital, LLC, and Ling Junction, LLC.

49. When Defendants made their representations, Defendants knew of their falsity or made the representations recklessly, as positive assertions, and without knowledge of their truth.

50. Red Lion entered into the binding Letter of Intent based on Defendants' representations and such representations caused Red Lion injury.

51. As a result of Defendants' fraudulent inducement, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count V – Conspiracy to Commit Fraud
### (All Defendants)

52. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

53. Defendants were members of a combination of two or more persons.

54. The object of Defendants' combination was to accomplish a fraudulent and deceptive objective, the purpose of which was unlawful.

55. The members had a meeting of the minds on the object or course of action.

56. At least one of the members, in this case Defendant Haff on behalf of and in cooperation with Dragon Capital, LLC, Ling Junction, LLC, and unidentified others, committed an unlawful, overt act to further Defendants' objective of defrauding Red Lion.

57. Red Lion suffered injury as a proximate result of Defendants' wrongful acts.

58. As a result of Defendants' wrongful acts, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count VI – Negligent Misrepresentation
### (All Defendants)

59. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

60. Defendants Haff, Dragon Capital, LLC, and Ling Junction, LLC made representations to plaintiff in the course of Defendants' business or in a transaction in which Defendants had a pecuniary interest.

61. Defendants supplied false information as described above for the guidance of Red Lion. Each Defendant made false promises regarding this financial transaction and likewise made false promises regarding the prompt return of Red Lion's funds should the financing vehicle not come to pass.

62. Defendants did not use reasonable care in obtaining or communicating the information.

63. Red Lion justifiably relied on Defendants' representations to its detriment.

64. Defendants' negligent misrepresentations proximately caused Red Lion's injury.

65. As a result of Defendants' negligent misrepresentations, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count VII – Violations of Texas Civil Theft Act, Chapter 31 of the Texas Civil Practice & Remedies Code *et seq.* (All Defendants)

66. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

67. Defendants individually and jointly unlawfully appropriated Red Lion's property with the intent to deprive Red Lion of its property as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14 of the Texas Penal Code.

68. As a result of Defendants' theft, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### Count VIII – Money Had and Received
### (All Defendants)

69. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

70. Defendants hold money in the amount of at least $400,000.

71. $400,000 of those funds held by Defendants belongs to Red Lion in equity and good conscience.

72. As a result of Defendants' refusal to return those funds promptly upon reasonable request and in conformity with Defendants' contractual obligations, Red Lion suffered injury in the amount of at least $400,000 in direct principal loss, plus interest, costs, attorneys' fees, and substantial business and reputational harm exceeding $900,000.

### V.   REQUEST FOR PREJUDGMENT ATTACHMENT AND INJUNCTIVE RELIEF

73. Red Lion hereby alleges and incorporates by reference each and every one of the preceding paragraphs of this Verified Complaint as if they were set forth fully herein.

74. Red Lion contemporaneously with the filing of this Complaint files its Motion for Prejudgment Attachment and Injunctive Relief.

75. Unless Defendants' assets of at least $400,000 located in this state are properly seized and kept secure during the pendency of this litigation, there is a substantial likelihood that Defendants will engage in further fraud and seek to hide, dispose, or otherwise relocate assets in an attempt to defraud creditors, including Red Lion as a prospective judgment creditor.

76. Further, unless Defendants are enjoined from engaging in additional misconduct, including hiding, disposing, or otherwise relocating assets outside of Texas, and altering, destroying, or spoliating relevant evidence of their wrongdoing, Red Lion will be irreparably harmed. Red Lion will be unable to recover its principal damages and all consequential damages and Defendants will be successful in furthering their unlawful activity by concealing evidence of their liability. Moreover, given Defendants' intentional fraud, forgery, and misrepresentations to Red Lion in an effort to induce Red Lion's cooperation under false pretenses, and conceal Defendants' own unlawful activity, Defendants must be enjoined from engaging in additional intentional evidence manipulation.

77. Such misconduct by Defendants has resulted and will continue to result in substantial loss, which is unascertainable at this point in time, and future economic loss which presently is incalculable.

78. Red Lion has no adequate remedy at law for Defendants' misconduct, as money damages alone are not adequate to compensate Red Lion for the ongoing harm caused by Defendants' misconduct.

79. Red Lion has a clear legal right to the requested relief.

80. The public interest favors entry of an injunction to uphold the sanctity of contract, to ensure evidence preservation, and to protect the legitimate business interests of Red Lion.

## VI. ATTORNEYS' FEES

81. Pursuant to TEX. CIV. PRAC. & REM. CODE § and 38.001(8), Red Lion is entitled to recover, and hereby pleads the Court for an award of, its reasonable and necessary attorneys' fees in connection with Defendants' breaches of their obligations to Red Lion under the relevant Letter of Intent.

82. Pursuant to TEX. CIV. PRAC. & REM. CODE § 134.005(b), Red Lion is entitled to recover, and hereby pleads the Court for an award of, its reasonable and necessary attorneys' fees in connection with Defendants' violation of the Texas Civil Theft Act.

83. Pursuant to 18 U.S.C. § 1964(c), Red Lion is entitled to recover, and hereby pleads the Court for an award of, its reasonable and necessary attorneys' fees in connection with Defendants' RICO Act violations.

## VII. EXEMPLARY DAMAGES

84. Red Lion seeks an award of exemplary damages under TEX. CIV. PRAC. & REM. CODE § 41.003, because Red Lion's damages resulted from Defendants' fraud and/or malice.

85. Red Lion further seeks an award of exemplary damages pursuant to 18 U.S.C. § 1964(c) due to Defendants' RICO Act violations.

## PRAYER FOR RELIEF

A. Enter an order granting Red Lion's requests for prejudgment attachment and preliminary injunctive relief;

B. Enter a judgment against Defendants on each count of this Complaint;

C. Award Red Lion its actual, consequential, and double and/or treble exemplary damages as provided for under the RICO Act;

D. Award Red Lion its reasonable and necessary attorneys' fees incurred in or related to this action;

E. Award Red Lion pre- and post-judgment interest at the highest rate allowable by law;

F. Award Red Lion its costs of court; and

G. Grant Red Lion all such further and additional relief to which it may be justly

entitled.
Dated: September 13, 2019

Respectfully submitted,

*/s/ Erik G. Moskowitz*
Erik G. Moskowitz
Texas Bar No. 24089904
The Chapman Firm, PLLC

**ATTORNEY FOR PLAINTIFF
RED LION RENEWABLES, LLC**

## VERIFICATION

STATE OF Iowa §
§
COUNTY OF Warren §

The undersigned, Terry Dvorak, principal and managing member of Red Lion Renewables, LLC, being duly sworn on his oath, does hereby state as follows: "My name is Terry Dvorak. I am over the age of 18 years old, of sound mind, and fully qualified to make this verification. I have read the foregoing *Plaintiff's Original Verified Complaint and Request for Prejudgment Attachment and Injunctive Relief*, and I declare under penalty of perjury that the facts contained within that pleading are true and correct."

Executed on this 13th day of September 2019.

*Terry Dvorak*