# EXHIBIT 2

## ESCROW AGREEMENT  (any previous agreements are null and void)

This Escrow Agreement (the "**Agreemen**t") is made effective on this 17 April 2019 by and between: Ling Junction, LLC ("**Depositor**"), whose office is located at 13135 Delachaise Street San Antonio TX 78323 and Newport Global Trading, Ltd ( "**Collateral Provider**"), whose office is located at PO BOX 213533, Dubai, UAE ( **Depositor** and **Collateral Provider** may hereinafter be referred to as a "**Party**" or collectively as the "**Parties**"), and, Medley & Associates Law Firm Attorney & Counselor at Law (hereinafter referred to as "**Escrow Agent**"), whose office is located at 2727 Paces Ferry Rd Suite 1450 Atlanta Ga 30339. The Escrow Agent is a limited party to this Agreement only for the strictly limited purposes set forth herein and shall not otherwise be in any form of privity with **Parties**.

**Definitions.**

| | |
|---|---|
| Depositor & applicant SBLC | : Ling Junction, LLC |
| Collateral Provider | : Newport Global Trading Ltd |
| Escrow Fee | : $ 5,000,00 USD |
| Escrow Agent Law | : Medley & Associates Law Firm, Attorney & Counselor at |
| Escrow Deposit toward the instrument: | $395,000.00 |
| Instrument Face Value. | : $40,000,000 USD SBLC ("**Collateral**") |
| Issuing Bank & Delivery | : Barclays or equivalent – MT760 |

**RECITALS:** This Agreement is issued by the Escrow Agent named above, and accepted by Collateral Provider and Depositor in respect to Deposit as mentioned above, (the "**Escrow Deposit**") to be wired by Depositor or its designated capital provider to the Escrow Attorney's nominated bank account (**Annex #1**) in connection with a financial instrument to be issued by Collateral Provider or its affiliated companies in favor of, or based upon instructions to be furnished by, Depositor or its assignee (the "**Beneficiary**") in support of a commercial loan transaction (the "**Transaction**"). The Escrow Deposit will be disbursed only as set forth below, or as the Parties may otherwise agree, to cover the issuance and delivery fees (the "**Fees**") for the provision of an agreed upon financial instrument issued in the form of a SBLC (the "**MT760")** with a face value in amount of $40,000,000 USD minimum.  The MT760, with terms and conditions as set forth on **Annex #2**, or as otherwise specified by The Depositor and agreed to by Collateral Provider, will be transmitted electronically to a financial institution to be designated by the Depositor, via SWIFT instrument MT760.

The SBLC is to be used as security for the Commercial Transaction. The SBLC is expected to have a term of one year and one day but may be extended by Collateral Provider throughout the term of the Transaction subject to Collateral Providers approval and renewal.

The Escrow Agent shall hold the Escrow Deposit under its care, custody, and control, and will disburse the Escrow Deposit only on the basis of the protocols set forth below or as otherwise agreed upon by

the Parties. For the avoidance of doubt, the Escrow Agent is a limited party to this Agreement only for the strictly limited purposes set forth herein and shall not be in any other form of privity with Depositor or Collateral Provider.

**Appointment of Escrow Agent/Agency.** The Parties appoint and designate Medley & Associates Law Firm Attorney & Counsellor at Law, as Escrow Agent to receive, hold, and disburse the Escrow Deposit in accordance with the terms of this Agreement. Medley & Associates Law Firm hereby agrees to act as Escrow Agent and to hold, safeguard and disburse the Escrow Fund pursuant to the terms and conditions hereof. For the avoidance of doubt, the Escrow Agent is a limited party to this Agreement for the strictly limited purposes set forth herein and shall not be in any form of privity with the Parties except as set forth herein.

**ESCROW PROCEDURES**: The escrow and SBLC issuance procedures, unless amended in writing by the Parties, are as follows:

1   The Parties acknowledge that the Escrow Deposit as transferred from the Preliminary Escrow Attorney shall be held in the Escrow Agent's IOLTA account and that interest earned on the Escrow Deposit is transferred to the program for charitable purposes and for the provision of legal services to indigent clients.

    Payment of the Escrow Deposit shall be made to Escrow Agent by SWIFT or similar wire transfer. All notices to and/or by a Party or the Escrow Agent are to be in writing.

2   All payments made under this Agreement by Escrow Agent to any Party, or its designated agent, will be made by the Escrow Agent without protest, significant delay or deductions, other than standard bank charges, the Escrow Fee and such other fees as may be mutually agreed upon from time to time and in writing.

3   The Escrow Agent will have no responsibility for reporting monies received or paid out pursuant to this Agreement to any tax authority, and the Parties specifically agree that they shall be responsible for their respective tax obligations, if any, wherever incurred.

4   By signing this Agreement, Depositor confirms under penalty of perjury that after careful review and to the best of its knowledge, information and belief, any and all monies being wired into the Escrow Agent's account under the terms of this Agreement are from lawful sources, do not constitute money laundering, are not part of a criminal enterprise, and are not the proceeds of, nor destined to support, terrorist or criminal activities of any kind.

5   The interests of the Parties in the Escrow Deposit shall not be assignable or transferable, other than by operation of law (in which case, the portion of the Escrow Deposit so assigned or transferred shall continue to be bound by the terms of this Agreement). No assignment or transfer of any of such interests by operation of law shall be recognized or given effect until Depositor and the Escrow Agent shall have received written notice of such assignment or transfer.

**6**   The Escrow Deposit shall be free from any lien, attachment, trustee process or any other judicial process of any creditor of any Party hereto. In case the Deposit is wired from third party accounts / third parties not being the Depositor, the only legal contractual relationship in regards to the escrow deposit is between Escrow Agent, Depositor and Collateral Provider. The Escrow Agent shall hold and safeguard the Escrow Deposit until it is released pursuant to the protocol (the "Protocol") as set forth below. Notwithstanding the foregoing, if the Escrow Deposit shall be attached, garnished, or levied upon pursuant to judicial process, or the delivery of funds held in the Escrow Deposit shall be stayed or enjoined by any court order, or any court order shall be made or entered into affecting the Escrow Deposit, or any part thereof, the Escrow Agent is hereby expressly authorized to obey and comply with such judicial process or court order, and shall provide Depositor as much advance written notice as is reasonably practicable thereof. In the event the Escrow Agent obeys or complies with any judicial process or court order following Depositor's receipt of such advance written notice required by the preceding sentence, it shall not be liable to any Party hereto or to any other person, firm or corporation by reason of such compliance, notwithstanding the subsequent reversal, modification, annulment, or setting aside of such court order.

**7**   Depositor understands that the actual delivery of the SBLC depends on the procedures of the issuing bank (Barclays Bank or such other institution as may be designated by Collateral Provider, subject to approval by Depositor). The delivery Protocol for this Agreement is set forth below. As part of this Protocol, Collateral Provider agrees to communicate with the issuing bank to insure that communications to the Escrow Agent from the issuing bank are properly sent and Depositor agrees to communicate with the receiving bank to insure proper tracking of the SBLC. The Escrow Agent shall have no obligation to communicate with the issuing bank or receiving bank except as otherwise set forth herein. The Protocol is as follows:

  a.   This Agreement is signed and the Escrow Deposit is deposited into the Preliminary Escrow Attorney's trust account. The Escrow Agent's fee is paid from the Escrow Deposit via wire transfer to the Escrow Agent's designated account (Annex 1).

  b.   Depositor shall provide to Collateral Provider and the Escrow Agent the language required by the Beneficiary for the SBLC, in the form set forth in Annex #2 or such other form as the Beneficiary my require.

  c.   Upon receipt of the Escrow Deposit for the SBLC, Collateral Provider shall arrange for the issuing bank to issue an RWA Commitment Letter in the form of an email (the "**Readiness Letter**"), in a form deemed acceptable by Depositor, along with a sanitized version of SBLC ("**Sanitized Version**"), to be sent to the Collateral Provider. Collateral Provider shall forward copy to the Escrow Agent. Upon receipt of the copy of the Readiness Email from Issuing bank and the Sanitized Version from the issuing bank forwarded by Collateral Provider, the Escrow Agent shall notify Depositor and provide a copy of the text of the Readiness Email and the Sanitized Version on the email received from the issuing bank. Upon receipt of the email containing the Readiness Letter and the Sanitized Version, the Escrow Attorney shall transfer the escrow deposit as mentioned under definitions above to

Collateral Providers designated account.  Upon release of any Escrow Deposit to Collateral Providers designated account, the released Escrow Deposit is fully earned and is non-refundable.

d.      Depositor shall consult the Receiving bank and/or its beneficiary party at the receiving bank. Upon receipt of the instruction by Depositor to Collateral Provider to send the MT760, Collateral Provider will deliver the MT 760 to the receiving bank Swift coordinates provided by Depositor ("**MT 7 6 0 Instruction**").

e.      Collateral Provider will instruct Issuing bank to send the S B L C to the receiving bank details as provided by the Depositor. The issuing bank will also send a copy of the MT760 bank to bank by bank email.  Upon written confirmation that the MT760 had been delivered and received Depositor shall pay the outstanding balance for the cost of the MT760 via Swift to Collateral Provider designated account in an amount equal to Four Million United States Dollars and no cents only ($4,000,000.00 USD) within ten (10) to maximum twenty (20) banking days from the date the MT760 SBLC is delivered and received.

f.      When the MT760 is sent, the sending bank will also email the receiving bank officer a copy of the MT760 including the acknowledgement delivery page ("**Acknowledgement of Delivery**"). In the event the receiving bank officer is unable to confirm receipt of the MT760, notwithstanding the copy of the **Acknowledgement of the Delivery**, the receiving bank officer will either reply to the Acknowledgement of Delivery email (" **Reply Email**") or send a SWIFT ("**Reply Swift**") to the sending bank stating that the receiving bank is unable to confirm the receipt of the MT760. Upon receipt of the Reply Email or the Reply Swift, stating that the receiving bank is unable to confirm delivery of the MT760, the sending bank will resend the MT760. Provided however, it is understood and agreed by the Parties that the **Acknowledgement of Delivery** is proof that the MT760 was delivered to the receiving bank.

g.      If Collateral Provider is unable, for any reason, to cause the issuing bank to issue the S B L C in accordance with subparagraph "e" above, Collateral Provider shall, within five (5) business days of the receipt of a written demand, via email, from Depositor or its attorney, return the Escrow Deposit, net of escrow fee, to Depositor or its funding source.

h.       It is agreed and understood by Depositor, and any of its affiliates (including the Beneficiary), employees, agents, attorneys, accountants, monetizers or its advisors, officers and/or directors that they will not contact or attempt to contact, directly or indirectly, any office or officer of the issuing bank directly or indirectly regarding the Readiness Letter or the SBLC without the explicit cooperation of Collateral Provider. Any such attempted contact shall constitute a material breach of this Agreement and Depositor shall pay Collateral Provider the full fee of the S B L C ($4,000,000.00 USD) as liquidated damages and not as a penalty. Depositor is liable for the actions of its agents, employees, attorneys, accountants, officers and/or directors and the beneficiary with regard to the prohibitions set forth in this sub-section j. Should Depositor deem it necessary to confirm either the Readiness

Email, the Sanitized Version, or the S B L C with the issuing bank, it shall notify the Escrow Agent and he, in coordination with Depositor and Collateral Provider, shall arrange an appropriate contact so that the issuing bank will accept a communication from Depositor or its attorney.

i.   It is agreed and understood by Depositor that Collateral Providers obligation under this Agreement is to deliver a SBLC that comports with the requirements set forth herein and, further, that Collateral Provider, its shareholders, directors, agents and representatives are not a party to the underlying Transaction, or its other participant parties involved in the transaction other than the issuing bank or other actions taken by Depositor and shall be fully indemnified and held harmless by Depositor or any related parties of Depositor, against all costs, expenses and liabilities Collateral Provider may incur as a result of any actions that arise from, touch upon or relate to the underlying Transaction or other actions taken by Depositor.

**8**   Without limitation for indemnification, Depositor shall be responsible for all reasonable extraordinary expenses, if any, incurred by Escrow Agent and Collateral Provider in connection with the performance of his obligations in this Agreement. Such extraordinary expenses must be preapproved by Depositor. Escrow Agent shall provide a full accounting of any such extraordinary expenses incurred in complying with this Agreement prior to Depositor paying for such expenses. Escrow Agent shall have no duties or responsibilities except those expressly set forth herein. SWIFT and/or wire transfer fees are not the responsibility of the Escrow Agent and shall be deducted by the Escrow Agent's bank as appropriate.



9    Escrow Agent may act in reliance upon any writing, authentication, instrument or signature presented or delivered under this Agreement which he reasonably believes to be genuine and in conformance with the documents/instruments described herein; Escrow Agent may assume the validity and accuracy of any statement or assertion contained in such a writing, authentication or instrument, and may assume that any person purporting to give any writing, authentication, notice, advice, or instructions under and in connection with this Agreement and the Escrow Deposit has been duly authorized to do so based upon the terms and conditions of this Agreement including all Annexes and/or Exhibits, if any, and  attachments and shall not be liable for the accuracy of any data, document or instrument provided to him by any Party.

10    Nothing in this Agreement shall cause Escrow Agent to have any liability regarding the MT760, its issuance, non-issuance, delivery, the Readiness Email, the Sanitized Copy or the underlying Transaction between Depositor and any third party. Depositor hereby irrevocably and unconditionally agrees that the Escrow Agent does not assume any responsibility or liability for the Transaction or the delivery of any SWIFT messages or the MT760 and hereby indemnifies and holds the Escrow Agent, his agents, employees and affiliates harmless for any fees, loss, costs, liability, judgements, settlements or expense (including without limitation attorneys' fees and costs) which arise out of, relate to or result from any act performed by Escrow Agent relating to or arising out of the performance of his duties. The Escrow Agent is not obligated to undertake any due diligence to confirm the authenticity of any communication received regarding the subject of this Agreement.

11    Upon release and disbursement of the Escrow Deposit in accordance with this Agreement, Escrow Agent and Collateral Provider shall be fully released from any and all further obligations concerning the Escrow Deposit. Upon the release and disbursement of the Escrow Deposit in accordance with this Agreement, the Escrow Agent shall be released from any and all duties and obligations with respect to this Agreement.

12    Nothing in this Agreement shall be construed as creating any form of partnership or employee/employer relationship between the Depositor, Collateral Provider and the Escrow Agent.

13    Depositor and Collateral Provider hereby certify and warrant that neither the execution and delivery of this Agreement nor compliance with the terms and conditions of this Agreement by either Party will breach or conflict with any of the terms, conditions or provisions of any agreement or instrument to which either Party is or may be bound or constitute a default thereunder or result in a termination of any such agreement or instrument.



14   This Agreement shall be valid, legally binding and enforceable even if any of the specific details of the Transaction, or the relevant Transaction codes, are changed by the banks involved, and/or by any of the parties at any point during the Transactions.

15   This Escrow Agreement may be executed in multiple instances of identical separate counterparts, each of which for all purposes is to be deemed an original, but all of which shall constitute, collectively, one agreement. Signature pages to this Agreement may be detached from multiple separate counterparts and attached to the same document and an electronic copy or other facsimile of any such executed signature page shall be valid as an original.

16   This Escrow Agreement shall be interpreted and construed pursuant to the laws of England and Wales without regard for its conflict of law provisions and venue for any legal action brought by any party to the Agreement shall be exclusively in any court of competent jurisdiction within the city of London..

**THE BALANCE OF THIS PAGE LEFT BLANK**

**Signature Page for   Escrow Agreement**

**IN WITNESS WHEREOF,** the undersigned have signed this Agreement effective as of the foregoing date stated above.

Acknowledged and Agreed:


**Client/Depositor**                                              **Collateral Provider.**

Signature                                                        Signature

By: Ling Junction, LLC                                            By : Newport Global Trading Ltd
Name: Roderick C. Haff                                           Name: Martien Eerhart
Role :  CEO                                                      Role : Authorized Representative
Phone: +210-315-6073                                             Phone: +1 401 206 0441
Email: haff.chris@gmail.com                                      Email:  info@fwaycapital.com


**ESCROW AGENT**: Attorney & Counselor at Law



Signature

By: Medley & Associates  Law Firm
Name: Leonard Medley
Phone: +17103197592
Email: leonard@mkalaw.com

**ANNEX #1**

**ESCROW AGENT BANK COORDINATES**

Medley & Associates, LLC– Attorneys at Law
SunTrust Bank
3300 Northside Pkwy NW
Atlanta, Ga 30327

ABA Routing: 061000104
Swift: SNTRUS3A
Account: 1000-1675-60910

ATTN: Mr. Leonard Medley, Esq
2727 Paces Ferry Rd SE
Suite 1450
Atlanta, Ga 30339



**ANNEX #2**

RWA BANK EMAIL TO COLLATERAL PROVIDER & VERBIAGE MT760 AND RECEIVING BANK DETAILS

Dear……

Please be informed of the following Barclays RWA verbiage in regards to a SBLC to be issued.

April XX , 2019

WELLS FARGO Private Bank.
100 S Ashley Dr., Suite 940
Tampa, FL33602
USA
Bank officer: Larry Mattachionne, Vice President / Wealth Management Private Banking Advisor
Bank officer email : Larry.f.mattacchione@wellsfargo.com

Sub: RWA to deliver confirmation

In re: transaction reference: …………..
40M USD SBLC No. XXXXXXXX
Beneficiary: Account No.2104-9498
Swift : WFBIUS6S

This Email shall serve as notice that our Client Ling Junction LLC, a US Limited Liability Company with Company Number: 201200455482, maintains a business Account, in good-standing with our Bank.

Further, at our Client's direction we hereby confirm being ready to issue and deliver unconditional, transferable, divisible, irrevocable, Standby Letter of Credit ("SBLC") in accordance with the latest-revision UCP600, under which terms we engage with your goodselves, with the below Verbiage for your preliminary-records.

We hereby confirm said SBLC Instrument is for the immediate-credit and benefit of your Account  holder HERITAGE INTEGRITY INVESTMENT TRUST. at 275 Madison Avenue 6th Floor New York, NY 10016 to a maximum of Fourty Million United States Dollars and no Cents only (US $40,000,000.00) at the benefit of your valued Customer.
.
We further confirm the above-referenced Instrument is authentic, legal, valid, and shall be delivered, under MT760 format and modality, coming week.

Upon your satisfactory receipt, be so kind as to notify us accordingly.

Sincerely yours,
BARCLAYS BANK, PLC

**IRREVOCABLE STANDBY LETTER OF CREDIT**
**NO. XXXXXXXXXX-2018**


AMOUNT: $40,000,000.00
USD


ON BEHALF OF OUR APPLICANT , [NAME OF APPLICANT] LOCATED [ADDRESS OF
APPLICANT]AND UNDER FULL RESPONSIBILITY , WE,[NAME OF ISSUING BANK]LOCATED AT
[ADDRESS OF BANK]ISSUE OUR IRREVOCABLE AND UNCONDITIONAL STAND BY LETTER OF
CREDIT NUMBER [SBLC NUMBER] TO THE FAVOR OF HERITAGE INTEGRITY INVESTMENT
TRUST LOCATED AT 275 MADISON AVENUE, 6TH FLOOR, NEW YORK, NY 10016, IN THE
AMOUNT NOT EXCEEDING USD $40,000,000.00 UNITED STATES DOLLARS (FOURTY MILLION
UNITED STATES DOLLARS ONLY)INCLUDING  PRINCIPAL, INTEREST AND ALL CHARGE).

THIS  IRREVOCABLE  STANDBY  LETTER  OF  CREDIT  MAYBE  TRANSFERABLE  BY
AUTHORIZATION OF THE ISSUING BANK WAIVING ALL RIGHTS OF OBJECTION AND DEFENSE
ARISING. THEREFORE, WE HEREBY IRREVOCABLY AND UNCONDITIONALLY, UNDERTAKE TO
PAY TO HERITAGE INTEGRITY INVESTMENT TRUST, UPON YOUR FIRST DEMAND, ANY
AMOUNT UP TO THE ABOVE MENTIONED MAXIMUM AMOUNT, UPON RECEIPT OF YOUR REQUEST
FOR PAYMENT DULY SIGNED IN ORIGINAL OR BY AUTHENTICATED SWIFT STATING THAT,
THE APPLICANT HAS NOT REPAID THE AMOUNT CLAIMED UNDER THIS IRREVOCABLE
STANDBY LETTER OF CREDIT NUMBER [SBLC NUMBER] ON THE DUE DATE.

SUCH PAYMENT SHALL BE MADE WITHOUT SETTING OFF AND FREE, CLEAR OF ANY
DEDUCTION, CHARGES FEES OR WITHHOLDING OF ANY NATURE OR ANY POLITICAL
SUBDIVISION OR AUTHORITY THEREOF OR THEREIN.

OUR IRREVOCABLE STANDBY LETTER OF CREDIT IS VALID UNTIL [MONTH DAY] 2020 AND
EXPIRES IN FULL AND AUTOMATICALLY UNLESS EXTENDED UNDER THE FOLLOWING
CONDITION:

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT SHALL BE AUTOMATICALLY
EXTENDED WITHOUT AMENDMENT FOR ADDITIONAL 12 MONTH PERIODS FROM THE PRESENT
OR EACH FUTURE EXPIRATION DATE, UNLESS AT LEAST 60 DAYS PRIOR TO THE CURRENT
EXPIRY DATE WE SEND NOTICE IN WRITING TO YOU VIA COURIER OR HAND DELIVERY,
THAT WE ELECT NOT TO AUTOMATICALLY EXTEND THIS LETTER OF CREDIT FOR ANY
ADDITIONAL PERIOD.  UPON SUCH NOTICE TO YOU, YOU MAY DRAW ON US AT SIGHT FOR
AN AMOUNT NOT TO EXCEED THE BALANCE REMAINING IN THIS LETTER OF CREDIT WITHIN
THE THEN-APPLICABLE EXPIRY DATE, BY PRESENTATION OF YOUR DRAFT AND DATED
STATEMENT PURPORTEDLY SIGNED BY ONE OF YOUR OFFICIALS READING AS FOLLOWS:

BENEFICIARY'S DATED STATEMENT PURPORTEDLY SIGNED BY ONE OF ITS AUTHORIZED
OFFICIALS READING AS FOLLOWS:

"THE AMOUNT OF THIS DRAWING IN THE AMOUNT NOT EXCEEDING USD $40,000,000.00
UNDER [ISSUING BANK] LETTER OF CREDIT NO. [SBLC NUMBER] REPRESENTS FUNDS DUE
TO US, AS [BENEFICIARY] HAS FAILED TO SATISFY ITS OBLIGATIONS IN FAVOR OF
[BENEFICIARY BANK] EITHER AS SAID DOCUMENTS WERE ORIGINALLY EXECUTED OR AS

THE SAME MAY BE AMENDED, EXTENDED, RESTATED OR OTHERWISE MODIFIED OR REPLACED
FROM TIME TO TIME."


THIS LETTER OF CREDIT IS AVAILABLE WITH [ISSUING BANK] AGAINST
PRESENTATION OF YOUR DRAFT AT SIGHT DRAWN ON [ISSUING BANK],
WHEN ACCOMPANIED BY THE DOCUMENTS INDICATED HEREIN.


OUR IRREVOCABLE STANDBY LETTER OF CREDIT WILL BE REDUCED BY EACH PAYMENT MADE
BY US AS A RESULT OF A CLAIM.


THIS IRREVOCABLE STANDBY LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS
AND PRACTICE FOR DOCUMENTARY CREDITS, INTERNATIONAL CHAMBER OF COMMERCE
PUBLICATION 600, LATEST VERSION.

THIS IRREVOCABLE STANDBY LETTER OF CREDIT IS GOVERNED BY UNITED STATES OF
AMERICA LAW, PLACE OF JURISDICTION AND PERFORMANCE IS UNITED STATES OF
AMERICA.